# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

EMILY MACBLAIN

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Storm Law Partners, PLLC, 1000 Main Street, Suite 2300
Houston, Texas 77002, 832-323-3000

## DEFENDANTS

ALLSTATE INSURANCE COMPANY

County of Residence of First Listed Defendant:
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Labletta & Walters LLC, 200 Barr Harbor Drive, Suite 400,
Conshohocken, PA 19428, 610-828-3339

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(*Do not cite jurisdictional statutes unless diversity*)**:
28 U.S.C.A. Section 1332(a); 28 U.S.C. Section 1441(a)

Brief description of cause:
Breach of insurance contract and bad faith

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE DOCKET NUMBER

DATE: September 23, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/Christian P. LaBletta

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EMILY MACBLAIN,<br>*Plaintiff*,<br>v.<br>ALLSTATE INSURANCE COMPANY,<br>*Defendant*. | NO. 2:26-cv-7344 |

**NOTICE OF REMOVAL**

TO: THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Defendant, Allstate Insurance Company ("Allstate"), by and through its attorneys, LaBletta & Walters LLC, hereby files this Notice of Removal of the above-captioned matter from the Court of Common Pleas of Philadelphia County, the jurisdiction which is now pending, to the United States District Court for the Eastern District of Pennsylvania and in support thereof avers as follows:

1. On or about August 3, 2026, this action was commenced in the Court of Common Pleas of Philadelphia County, Pennsylvania by the filing of a complaint and assigned docket number 260800103. A true and correct copy of Plaintiff's complaint is attached hereto as Exhibit "A."

2. In the Complaint, Plaintiff named Allstate as the sole defendant.

3. At the time this action was commenced and continuing to the present, Allstate is a corporation incorporated under the laws of the State of Illinois, with its principal place of business in the State of Illinois.

4. The action arises out of Allstate's alleged denial of full payment of the Plaintiff's homeowner's insurance claim.

5. Pursuant to 28 U.S.C. § 1441, cases over which federal district courts have original jurisdiction may be removed by the defendants to the federal district courts embracing the place where such action is pending.

6. This Court has original jurisdiction over lawsuits in which: (a) the parties are citizens of different states; and (b) the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332. Both conditions of original jurisdiction are now met in this matter.

7. At the time this action was commenced and continuing to the present, the Plaintiff is a citizen of Pennsylvania with her principal domicile at 130 Sigel Street, Philadelphia, PA 19148. See Exhibit "A."

8. As such, the parties to this action are diverse because the Plaintiff and Allstate are citizens of different states. See 28 U.S.C. § 1332(a)(1).

9. Moreover, the amount in controversy, based on the allegations in the complaint, which include contractual damages and allegations of bad faith together with interest, court costs, counsel fees, and damages for delay, exceed the sum of Seventy-Five Thousand Dollars ($75,000.00),

10. To determine whether the amount in controversy requirement for diversity jurisdiction has been satisfied, the Court must measure the amount not by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated. See Werwinski v. Ford Motor Co., 286 F.3d 661, 667 (3d Cir. 2002).

11. Furthermore, a lawsuit "will be remanded only if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount of $75,000." See Samuel-Bassett v. Kia

Motors America, Inc. 357 F.3d 392 (3d Cir. 2004); See also Frederico v. Home Depot, 507 F.3d 188, 195 (3d Cir. 2007)(citing Valley v. State Farm Fire and Cas. Co., 504 F. Supp. 2d 1, 3-4 (E.D. Pa. 2006)("[A] case must be dismissed or remanded if it appears to a legal certainty that the plaintiff cannot recover more than the jurisdictional amount of $75,000. The rule does not require the removing defendant to prove to a legal certainty the plaintiff can recover $75,000 – a substantially different standard.").

12. In the case at bar, the Plaintiff claims contractual damages of seventy-six thousand, seven hundred twenty dollars and twelve cents ($76,720.12), and bad faith punitive damages in an unspecified amount. See Exhibit "A."

13. If the Plaintiff were to prevail on the causes of action asserted in her Complaint, she may recover damages that may be in excess of the $75,000 jurisdictional threshold.

14. As a result, the amount in controversy requirements for diversity jurisdiction is satisfied.

15. Finally, this notice of removal is procedurally proper.

16. To properly remove a case from state court to federal court, the removing party must file the notice of removal in federal court within 30 days of service of the complaint and file the notice of removal in state court. 28 U.S.C. § 1446(b) and (d).

17. Plaintiff's counsel affirms that Defendant was served with the complaint on August 25, 2026, which is less than thirty-days prior to the filing of the within notice of removal. A true and correct copy of the Affidavit of Service filed by Plaintiff is attached hereto as Exhibit "B."

18. Accordingly, the present lawsuit is removable from state court to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C.A. §1332(a) and 28 U.S.C. §1441(a).

19. Finally, the undersigned's office entered an appearance for Allstate on or about September 15, 2026. See entry of appearance attached hereto as Exhibit "C."

**WHEREFORE,** Defendant, Allstate Insurance Company, respectfully requests the above captioned matter now pending against it in the Court of Common Pleas of Philadelphia County, be removed to the United States District Court for the Eastern District of Pennsylvania

**LABLETTA & WALTERS LLC**

By: *_/s/ Christian P. LaBletta_*

**CHRISTIAN P. LABLETTA, ESQUIRE**
Attorney I.D. No.: 90545
Attorney for Defendant
101 W. Elm Street, Suite 110
Conshohocken, PA 19428
Phone: (610) 828-3339
Fax: (610) 828-3347
clabletta@lablettawalters.com

Dated: September 23, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EMILY MACBLAIN,<br>*Plaintiff*,<br>v.<br>ALLSTATE INSURANCE COMPANY,<br>*Defendant*. | NO. 2:26-cv-7344 |

**AFFIDAVIT**

CHRISTIAN P. LABLETTA, ESQUIRE, being sworn according to law, deposes and says that he is the counsel for Defendant, Allstate Insurance Company, in the within matter; and that he has read the foregoing Notice of Removal and believes it to be true and correct, to the best of his knowledge, information and belief.

**LABLETTA & WALTERS LLC**

By: */s/ Christian P. LaBletta*

**CHRISTIAN P. LABLETTA, ESQUIRE**
Attorney I.D. No.: 90545
Attorney for Defendant
101 W. Elm Street, Suite 110
Conshohocken, Pennsylvania 19428
Phone: (610) 828-3339
Fax: (610) 828-3347
clabletta@lablettawalters.com

Dated: September 23, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EMILY MACBLAIN,<br>*Plaintiff*,<br>v.<br>ALLSTATE INSURANCE COMPANY,<br>*Defendant*. | NO. 2:26-cv-7344 |

**PROOF OF FILING**

I, CHRISTIAN P. LABLETTA, ESQUIRE, hereby certify that a copy of the foregoing Notice of Removal has been filed with the Prothonotary of the Court of Common Pleas of Philadelphia County on September 23, 2026.

**LABLETTA & WALTERS LCC**

By: *\/s/ Christian P. LaBletta*

**CHRISTIAN P. LABLETTA, ESQUIRE**
Attorney I.D. No.: 90545
Attorney for Defendant
101 W. Elm Street, Suite 110
Conshohocken, Pennsylvania 19428
Phone: (610) 828-3339
Fax: (610) 828-3347
clabletta@lablettawalters.com

Dated: September 23, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EMILY MACBLAIN,<br>*Plaintiff*,<br>v.<br>ALLSTATE INSURANCE COMPANY,<br>*Defendant*. | NO. 2:26-cv-7344 |

**CERTIFICATE OF SERVICE**

I, CHRISTIAN P. LABLETTA, ESQUIRE, hereby certify that a copy of the attached Notice of Removal has been served upon the following law firm by first class United States mail, postage pre-paid, this September 23, 2026 and electronic mail.

Parker Spadt
Storm Law Partners, PLLC
1000 Main Street, Suite 2300
Houston, Texas 77002

**LABLETTA & WALTERS LLC**

By: */s/ Christian P. LaBletta*

**CHRISTIAN P. LABLETTA, ESQUIRE**
Attorney I.D. No.: 90545
Attorney for Defendant
101 W. Elm Street, Suite 110
Conshohocken, Pennsylvania 19428
Phone: (610) 828-3339
Fax: (610) 828-3347
clabletta@lablettawalters.com

Dated: September 23, 2026

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: 130 Siegel Street, Philadelphia, PA 19148

***RELATED CASE IF ANY:*** Case Number:______________________ Judge:________________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☑ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify)*:______________________________

**B. *Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury (*Please specify*):________________
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*______________ ______________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☑ **does not** have implications beyond the parties before the court and ☐ **does** / ☑ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☐ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☑ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Emily MacBlain | : | CIVIL ACTION |
| v. | : | |
| Allstate Insurance Company | : | NO. 2:26-cv-7344 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (✓)

| 9/23/2026 | Christian P. LaBletta, Esquire | Allstate Insurance Company |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-828-3339 | 610-828-3347 | clabletta@lablettawalters.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

American LegalNet, Inc.
www.FormsWorkFlow.com

# Exhibit “A”

Filed and Attested by the
Office of Judicial Records
03 AUG 2026 12:29 pm
S. GILLIAM

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL ACTION

| | | |
|---|---|---|
| EMILY MACBLAIN, | ) | No. _______________ |
| Plaintiff, | ) | **COMPLAINT IN CIVIL ACTION** |
| **vs.** | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | Counsel of Record for Plaintiff: |
| | ) | Parker Spadt<br>PA ID No. 339504 |
| Defendant. | ) | |
| | ) | Parker Spadt<br>Storm Law Partners, PLLC<br>1000 Main Street, Suite 2300<br>Houston, Texas 77002<br>Ph: 832-323-3000<br>pspadt@stormlawpartners.com<br>service@stormlawpartners.com |
| **JURY TRIAL DEMANDED** | ) | |

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL ACTION

| | | |
|---|---|---|
| EMILY MACBLAIN, | ) | No. _______________ |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>NOTICE TO DEFEND</u>**

**TO THE WITHIN-NAMED DEFENDANT:**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within TWENTY (20) days after this Complaint in Civil Action and Notice are served, by entering a written appearance personally or by an attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that, if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL ACTION

| | | |
|---|---|---|
| EMILY MACBLAIN, | ) | No. _______________ |
| Plaintiff, | ) | |
| vs. | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, by and through her undersigned counsel, and files the following Complaint in Civil Action:

**PARTIES**

1. Plaintiff Emily MacBlain is an adult individual residing at 130 Sigel Street, Philadelphia, Philadelphia County, Pennsylvania 19148-1906.

2. Defendant Allstate Insurance Company is an Illinois corporation engaged in the business of providing property insurance, with a principal place of business at 3100 Sanders Road, Suite 201, Northbrook, Illinois 60062, and is authorized to conduct, and regularly conducts, insurance business in the Commonwealth of Pennsylvania. Plaintiff requests the Sherrif of Philadelphia County serve a true and correct copy of this Complaint, together with the requisite Notice to Defend, upon Defendant, Allstate Insurance Company, by service upon its registered agent for service of process in the Commonwealth of Pennsylvania, CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101, pursuant to Pa.R.C.P. 424(2).

## VENUE

3. Venue is appropriate in the Philadelphia County Court of Common Pleas because Plaintiff purchased the relevant homeowners insurance policy from Defendant to insure her property located at 130 Sigel Street, Philadelphia, Philadelphia County, Pennsylvania 19148-1906, and the loss giving rise to this action occurred at that property.

## THE POLICY

4. In consideration of the policy premiums paid to Defendant by Plaintiff, Defendant issued Standard Select Value Homeowners Policy No. 908 234 542 (the "Policy"), effective July 21, 2025, through July 21, 2026. A true and accurate copy of the Policy Declarations is attached hereto as Exhibit "A."

5. The Policy insures against direct physical loss to Plaintiff's dwelling located at 130 Sigel Street, Philadelphia, Pennsylvania 19148-1906 (the "Property"), including Dwelling Protection in the amount of $117,499.00, Other Structures Protection in the amount of $11,750.00, and Personal Property Protection in the amount of $82,250.00, subject to a $500.00 all-peril deductible, and the Policy likewise insures against loss caused by windstorm and hail.

## STORM DAMAGE TO THE INSURED PROPERTY

6. On or about August 1, 2025, a severe windstorm (the "Storm") caused direct physical loss of, or damage to, Plaintiff's Property, including but not limited to the dwelling roof, chimney, kitchen ceiling, and upstairs bedroom ceiling. The Policy was in effect at the time of the Storm.

7. Plaintiff notified Defendant of the damage to her Property as a result of the Storm and made a claim pursuant to the Policy, which Defendant assigned Claim Number 0820163012. Defendant assigned Chris Howard ("Howard") to investigate Plaintiff's claim for the loss and

damage. Howard was authorized as Defendant's representative and agent for purposes of the Storm-related claim.

8. At all times, Plaintiff made herself and her Property available to, and fully cooperated with, Defendant and its representative and agent to inspect and investigate the damages caused by the Storm.

9. Defendant, through its authorized representative and agent Howard, performed an inspection of Plaintiff's Property on or about March 3, 2026.

10. Defendant, through its authorized representative and agent Howard, incurred the duty of acting with due diligence in achieving a proper disposition of Plaintiff's claim when he undertook the handling of the disposition of the claim.

11. Further, Defendant, through its authorized representative and agent Howard, had a contractual duty under the Policy to act with due diligence, and in good faith, in achieving a proper disposition of Plaintiff's claim.

12. Defendant, through its authorized representative and agent Howard, grossly underestimated the scope of the damages sustained to Plaintiff's Property as a result of the Storm. Defendant failed to properly investigate the damages, and its own repair estimate reflected no meaningful payment for the covered Storm damage to the Property; refusing to address the dwelling roof and chimney entirely. A true and accurate copy of Defendant's estimate is attached hereto as Exhibit "B."

13. On or about March 3, 2026, Defendant issued a written denial of coverage for the damage to the interior kitchen ceiling and upstairs bedroom ceiling, asserting that the damage was excluded "wear and tear" and resulted from "faulty workmanship," rather than a covered, sudden

and accidental loss caused by the Storm. A true and accurate copy of Defendant's denial letter is attached hereto as Exhibit "C."

14. Defendant's denial of coverage did not address the roof damage or the chimney damage that resulted from the Storm.

15. As a result of Defendant's gross underestimation and wrongful denial of her claim, Plaintiff requested that Defendant reconsider its position. Defendant refused to comply with Plaintiff's requests and continued to frivolously and baselessly deny payment on Plaintiff's claim.

16. Defendant did not act fairly and honestly toward Plaintiff with due regard to Plaintiff's claim when Defendant failed to compensate Plaintiff for her Storm damages, in direct breach of the terms and conditions of the Policy, when under all of the circumstances Defendant could and should have done so, had it acted fairly and honestly toward Plaintiff, and with due regard for her interests.

17. Plaintiff has fulfilled all contractual obligations and conditions precedent under the Policy prior to initiating this lawsuit, or the same were waived.

18. There exists a controversy between Plaintiff and Defendant as to whether Defendant is responsible for coverage for the replacement cost of the actual physical damage to Plaintiff's Property caused by the Storm. Plaintiff has exhausted every reasonable means possible to resolve this dispute with Defendant. With no other option, Plaintiff was constrained to retain legal counsel, incurring additional expenses, and file this lawsuit.

**<u>COUNT I - BREACH OF CONTRACT</u>**

19. Plaintiff adopts, re-alleges, and incorporates her allegations set forth in Paragraphs 1-18 of this Complaint as if fully set forth herein.

20. The Policy constitutes a valid and legally binding contract between Plaintiff and Defendant.

21. The Policy was supported by adequate consideration in the form of the premiums that Plaintiff paid for her insurance coverage under the Policy.

22. Plaintiff has performed all conditions necessary to require Defendant to meet its obligations to perform under the Policy, including, without limitation, the timely payment of premiums and timely notice of the claim, and/or, in the alternative, Defendant has waived any and all other conditions.

23. Under the terms of the Policy, Defendant is required to compensate Plaintiff for all direct physical losses she suffered as a result of the Storm.

24. Despite Plaintiff's requests that Defendant pay her covered losses, Defendant has frivolously and baselessly failed and refused to pay Plaintiff's claim under the terms of the Policy, thereby causing further delay in restoring Plaintiff's Property to its pre-loss condition.

25. Defendant has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiff's claim according to the terms of the Policy.

26. Defendant has used the tactic of denying compensation to Plaintiff for her covered losses sustained due to the Storm, and has mischaracterized covered Storm damage as excluded wear and tear in an effort to avoid its obligations under the Policy.

27. As a result of Defendant's tactic of denying payment on Plaintiff's claim, Plaintiff has sustained covered losses from direct physical damage to the insured Property.

28. Defendant's actions in refusing to pay Plaintiff's claim represent a breach of contract.



Case ID: 260800103

29. As a direct result of Defendant's breach of the insurance contract, Plaintiff has been damaged and continues to suffer damages.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in her favor in the amount of $76,720.12, together with interest, costs, and such other relief as the Court deems just and proper.

**COUNT II - BAD FAITH**

30. Plaintiff adopts, re-alleges, and incorporates her allegations set forth in Paragraphs 1-29 of this Complaint as if fully set forth herein.

31. Defendant has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiff's claim according to the terms of the Policy.

32. In its March 3, 2026 denial letter, Defendant contended that the damage to the interior kitchen ceiling and upstairs bedroom ceiling of Plaintiff's Property was caused by long-term wear and tear and faulty workmanship, rather than the Storm.

33. Plaintiff believes and therefore avers that Defendant had no reasonable factual basis to conclude that the damage to Plaintiff's Property was excluded wear and tear rather than a covered Storm loss. The damages to Plaintiff's Property are estimated to be $76,720.12. The aforesaid denial of the insurance claim therefore constitutes "bad faith," as defined in 42 Pa. C.S. § 8371.

34. Defendant's own investigation and the widespread windstorm and hail event affecting the region on August 1, 2025 were inconsistent with Defendant's stated basis for denying coverage, yet Defendant failed to reasonably reconcile or investigate this inconsistency before denying Plaintiff's claim.

35. Defendant knew, or recklessly disregarded, that it lacked a reasonable basis to deny Plaintiff's claim, and nevertheless continued to assert that the damage was excluded wear and tear notwithstanding Plaintiff's independent estimate and evidence to the contrary.

WHEREFORE, Plaintiff prays this Honorable Court award punitive damages, attorney's fees, court costs, interest, and such other relief as the Court deems just and proper as part of any verdict in her favor.

## DEMAND FOR JURY TRIAL

36. Plaintiff demands a trial by Jury on all counts of this Complaint.

WHEREFORE, Plaintiff requests that, after due proceedings are had, all appropriate penalties be assessed against Defendant, and that Plaintiff receive any and all damages at law to which she is justly entitled and thus prays for judgment against Defendant in excess of the arbitration limits of the Court of Common Pleas of Philadelphia County, Pennsylvania, in excess of $50,000 on every count and claim.

Respectfully submitted:

**STORM LAW PARTNERS, PLLC**

**/s/ Parker Spadt**
Parker Spadt
Pennsylvania Bar No. 339504
1000 Main Street, Suite 2300
Houston, Texas 77002
(832) 323-3000
pspadt@stormlawpartners.com
service@stormlawpartners.com

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL ACTION

| | | |
|---|---|---|
| EMILY MACBLAIN, | ) | No. ______________ |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted Respectfully,

**STORM LAW PARTNERS, PLLC**

***/s/ Parker Spadt***
**Parker Spadt**
Pennsylvania Bar No. 339504
1000 Main Street, Suite 2300
Houston, Texas 77002
(832) 323-3000
pspadt@stormlawpartners.com
service@stormlawpartners.com

Filed and Attested by the
Office of Judicial Records
03 AUG 2026 12:29 pm
S. GILLIAM

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL ACTION

EMILY MACBLAIN, ) No. ______________

Plaintiff,

vs.

ALLSTATE INSURANCE COMPANY,

Defendant.

**VERIFICATION**

I, **Emily MacBlain**, state that the facts set forth in the foregoing Complaint in Civil Action are true upon my personal knowledge, information and belief. I understand that my statements are made subject to 18 Pa. Cons. Stat. §4904 providing for criminal penalties for unsworn falsification to authorities.

August 02, 2026
Date

[signature]
Emily MacBlain

docubee

Signature Process Reference: 4f1787ae-b27b-47d1-9a05-19c9f34591f2

| PARTICIPANT | DETAILS |
|---|---|
| | **Process started**<br>01-Aug-2026 2:20 PM EDT |
| **Emily MacBlain**<br>emacb223@gmail.com<br>IP Address: 172.56.221.48 | **Document viewed**<br>02-Aug-2026 10:35 AM EDT<br>Reference ID: b5b339c6-7e27-4540-ba69-b45e1e36375d |
| **Emily MacBlain**<br>emacb223@gmail.com<br>IP Address: 172.56.221.48 | **Document accepted & signed**<br>02-Aug-2026 10:35 AM EDT<br>Reference ID: b5b339c6-7e27-4540-ba69-b45e1e36375d |
| | **Document has been completed**<br>02-Aug-2026 10:35 AM EDT |

Allstate
You're in good hands.

Filed and Attested by the
Office of Judicial Records
03 AUG 2026 12:29 pm
S. GILLIAM

Date: 06/17/2026

Claim Number: 0820163012

Policy Number: 000908234542

Named Insured: Emily Macblain

To Whom it May Concern:

I am a duly authorized representative of Allstate Insurance Company. I certify that I have reviewed the records kept in the regular course of business and enclosed a copy of the policy and or declaration pages for the above claim and policy number.

This information, and supporting documents, were either sent via electronic mail (email) or printed and mailed through Allstate's Output Processing.

Sujal Katkam
Records Representative (Signature)

Sujal Katkam
Records Representative (Printed Name)

Allstate

*Blair Bogdan*
*120 Clairton Blvd*
*Pleasant Hills PA 15236*

Information as of June 5, 2025



Policyholder(s)
**Emily Macblain**

Policy number
**908 234 542**

Your Allstate agency is
**Blair Bogdan**
(412) 655-3600
BBOGDAN@allstate.com

EMILY MACBLAIN
130 SIGEL ST
PHILADELPHIA PA 19148-1906

## Thank you for being a loyal Allstate customer—we're happy to have you with us!

Here's your Standard Select Value Homeowners insurance renewal offer for the next 12 months. I've also included a guide to what's in this package and answers to some common questions.

### Renewing your policy is easy

Keep an eye out for your bill, which should arrive in a couple of weeks. Just send your payment by the due date on your bill. If you're enrolled in the Allstate® Easy Pay Plan, you won't receive a bill—we'll send you a statement with your payment withdrawal schedule. You also won't receive a bill if a mortgage company or lienholder pays your insurance premium for you.

### How to contact us

Give me a call at (412) 655-3600 if you have any questions. It's my job to make sure you're in good hands.

RP378-4

Policy number: 908 234 542
Policy effective date: July 21, 2025



## Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the guide below for the documents that are included. ***Next steps:*** review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. ***Next steps:*** please pay the minimum amount by the due date listed on it.

You can also pay your bill online at Allstate.com/support or through the Allstate mobile app. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule. Para español, llamar al 1-800-979-4285.

☐ **What if I have questions?**
Visit Allstate.com/support to browse our list of frequently asked questions and find information regarding billing or policy documents. You can also create an online account to access and manage your policies. Para español, llamar al 1-800-979-4285.

## A guide to your renewal package



**Policy Declarations***
The Policy Declarations lists policy details, such as your property details and coverages.



**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.




**Insurance Made Simple**
Insurance seem complicated? Our online guides explain coverage terms and features: www.allstate.com/madesimple Espanol.allstate.com/facildeentender

***** ***To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the Coverage Detail section in the enclosed Policy Declarations.***

0110070 037 2506055302418 000000908234542250605S302418PRO
PKR18PA2025060522504101A-000155-001-0-00-00

Case ID: 260800103

# Renewal Standard Select Value Homeowners Policy Declarations

Your policy effective date is July 21, 2025



## Total Premium for the Premium Period (Your bill will be mailed separately)

| | |
|---|---|
| Premium for property insured | $1,278.93 |
| **Total** | **$1,278.93** |

***Your bill will be mailed separately. Before making a payment, please refer to your latest bill, which includes payment options and installment fee information. If you do not pay in full, you will be charged an installment fee(s).***

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Home and Auto | **30.0%** | Claim Free | **10.0%** |
| Protective Device | **5.0%** | | |

## Location of property insured

130 Sigel St, Philadelphia, PA 19148-1906

## Rating Information

The dwelling is of brick construction and is occupied by 1 family

## Mortgagees (listed in order of precedence)

JPMORGAN CHASE BANK NA ISAOA ATIMA
P O Box 4465, Springfield, OH 45501-4465
Loan number: 1457415913

JPMORGAN CHASE BANK NA ISAOA ATIMA
P O Box 4465, Springfield, OH 45501-4465
Loan number: 6750029253

## Additional Interested Party

None

Information as of June 5, 2025

## Summary

Named Insured(s)
**Emily Macblain**

Mailing address
**130 Sigel St**
**Philadelphia PA 19148-1906**

Policy number
**908 234 542**

Your policy provided by
**Allstate Insurance Company**

Policy period
Begins on **July 21, 2025** at 12:01 A.M. standard time, with no fixed date of expiration

Premium period
Beginning **July 21, 2025** through **July 21, 2026** at 12:01 A.M. standard time

Your Allstate agency is
**Blair Bogdan**
120 Clairton Blvd
Pleasant Hills PA 15236
(412) 655-3600
BBOGDAN@allstate.com

**Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

## Coverage detail for the property insured

| *Coverage* | *Limits of Liability* | *Applicable Deductible(s)* |
|---|---|---|
| Dwelling Protection - No Replacement Guarantee | $117,499 | • $500 All peril |

PA070RBD

| | | |
|---|---|---|
| Other Structures Protection | $11,750 | • $500 All peril |
| Personal Property Protection - Reimbursement Provision | $82,250 | • $500 All peril |
| Additional Living Expense | Up to 12 months | |
| Family Liability Protection | $300,000 each occurrence | |
| Guest Medical Protection | $1,000 each person | |

▶ ***Other Coverages Not Purchased:***

- Business Pursuits*
- Electronic Data Processing Equipment*
- Extended Coverage on Cameras*
- Extended Coverage on Jewelry, Watches and Furs*
- Extended Coverage on Musical Instruments*
- Extended Coverage on Sports Equipment*
- Fire Department Charges*
- Home Day Care*
- Identity Theft Expenses*
- Incidental Office, Private School Or Studio*
- Increased Coverage on Money*
- Increased Coverage on Securities*
- Increased Silverware Theft Limit*
- Loss Assessments*
- Satellite Dish Antennas*

***** This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.***

## Scheduled Personal Property Coverage

***Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.***

## Your policy documents

Your Homeowners policy consists of the Policy Declarations and the following documents. Please keep them together.

- Standard Select Value Homeowners Policy – AP326-1
- Depreciation Amendatory Endorsement – AP4989
- Amendment Of Policy Provisions – AP4664-1
- Pennsylvania Standard Select Value Homeowners Policy Amendatory Endorsement – AP1299-2
- Sinkhole Activity Coverage Endorsement – AP4869

## Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

▶ Your premium is calculated based upon the dwelling protection limit you selected in the amount of $117,499. You should be aware that this is less than the amount to rebuild your dwelling, which we have estimated to be $285,000. This is not a replacement cost policy.

▶ Do not pay. Mortgagee has been billed.

PA070RBD
0110070 037 2506055302418 0000009082345422506055302418PRO
PKCR18PA2025060522504101A-000155-002-0-00-00

**Allstate Insurance Company's** Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

Thomas J. Wilson
President

Christine DeBiase
Secretary

# Important notices



Policy number: **908 234 542**
Policy effective date: July 21, 2025

## What You Should Know About Flood Insurance

Most homeowners, renters and commercial insurance policies do not provide coverage for flood damage. In fact, protection against floods is generally available only through a separate policy.

That's why Allstate is a participant in the National Flood Insurance Program (NFIP) and offers standard flood insurance policies.* A flood insurance policy can help complete the insurance protection for your property and help protect your financial well-being.

### You May Have More Risk from Flood Than You Think

Approximately 90 percent of all disasters in the U.S. are flood related. While you may think that it couldn't happen to you, over 25 percent of all flood losses occur in low- to moderate-risk areas.

What's more, flood damage is often accompanied by other damage, such as wind and hail (which is typically covered under a property policy). So if you purchase your NFIP coverage through Allstate, you would have the convenience and peace of mind that comes with working with just one claim adjuster and one agent, instead of two or more for a flood claim.

### Flood Coverage Is Affordable

The federal government sets the rates for flood insurance, so there's typically no difference in rates from policy to policy. You can switch to an NFIP flood insurance policy administered by Allstate for the same amount of premium you may be paying elsewhere. If you choose Allstate, you can have the quality service you've come to expect from us.

For more information about flood insurance, or if you have any questions about your policy in general, please contact your Allstate representative or visit us at allstate.com.

* Allstate provides the standard flood insurance policy under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations. The standard flood insurance policy is written by Allstate for the National Flood Insurance Program which is administered by the Federal Insurance Administration, part of the Federal Emergency Management Agency.

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

**X73168**

## Additional Protection for Your Most Valuable Possessions

Property insurance covers many belongings, but some items may require higher coverage limits than those in a standard property policy.

Scheduled Personal Property (SPP) coverage gives you additional protection against loss or damage to your valuables. It's protection not typically provided with standard property coverage. SPP benefits typically include:

- No deductibles to meet
- Coverage for lost or damaged items
- Coverage for valuables kept in a storage location outside your home

### Items That May Need the Extra Protection

SPP coverage provides protection for an array of valuable personal property. Here are some of the items you can protect by purchasing SPP coverage through Allstate:

- Jewelry (including wedding rings and precious or semi-precious stones)
- Furs
- Cameras (digital, still, movie, video and related equipment)
- Silverware and antiques (including furniture)
- Musical instruments
- Collections (stamps, coins, music)
- Fine art works (including paintings, etchings, vases and sculptures)
- Manuscripts or books
- Home-office equipment (laptop, computer, audio/visual)
- Sports equipment (such as golf clubs)

### Affordable Protection for Your Valuables

The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need. The rates are generally a small percentage of the total value of the items you're insuring. This means that your valuables are being protected for only a fraction of the cost.

### Regularly Review Your SPP Coverage

Even if you currently have SPP coverage, it's a good idea to review it annually. It's possible that the value of your property has changed or that you've purchased new items that have not been added to your coverage.

0010070 037 25060553024l8 0000009082345422506055302418PRO
PRR18PA20250605225041O1A-000155-003-0-00-00

To learn more about SPP coverage, or if you have any questions about your insurance policy in general, contact your Allstate representative, or visit us at allstate.com.

**X73169**

## What You Should Know About Claim Surcharges

Thank you for being a valued Allstate customer. We truly appreciate your business and the opportunity to serve you.

To help you better understand how claims may impact your premium on your Homeowners policy, the State of Pennsylvania requires us to send you this notice, which covers the following subjects:

- How Your Claims Affect Your Premium
- What Is a Claim Surcharge?
- "Chargeable" Property Claims
- Surcharge Amounts

We encourage you to take a moment to review the following important information. Please feel free to contact your Allstate representative with any questions about this notice or about any aspect of your policy.

### How Your Claims Affect Your Premium

If you have a claim-free history, you are receiving a lower premium than if you had one or more "chargeable" claims in the past five years. In other words, if we, or any other insurer, made a claim payment arising out of a covered loss under your policy, this may impact your premium.

### What Is a Claim Surcharge?

A claim surcharge is an additional amount added to your premium when you've had a "chargeable" claim. Once a surcharge is applied, it will remain on your policy for a period of up to three years and will be used in the calculation of your premium. Chargeable claims result in surcharges applied to the package premium amount.

### "Chargeable" Property Claims

A property claim is chargeable if it occurred during the three-year period prior to the policy effective date. At renewal, claims will be re-evaluated by looking at the three-year period ending 60 days prior to your policy effective date. In addition, for a property claim to be chargeable, the following must be true:

- The claim must have a total loss payment greater than $250; and
- The claim has or would have been have been covered by an Allstate Insurance Company policy under Section I—Your Property, Section II—Family Liability and Guest Medical Protection, and Section III—Optional Protection.

Exceptions:

- A claim with paid losses attributable only to identity theft expenses will not be considered chargeable.
- Claims associated with a secondary residence will not be chargeable for a policy covering the primary residence, and vice versa.

### Surcharge Amounts

Listed below are the maximum amount of claim surcharges we apply. These amounts indicate how much higher your premium will be if you have had one or more chargeable claim in the past three years. The surcharge amounts depend on the peril that caused the chargeable claim(s) and the underwriting tier of the policy.

| 1 claim | | 2 claims | | 3 claims | | Add'l claims | |
|---|---|---|---|---|---|---|---|
| Min | Max | Min | Max | Min | Max | Min | Max |
| 0% | 35% | 0% | 82% | 11% | 146% | 8% | 35% |

Please note: If you have had more than three chargeable claims in the past three years, you must increase the surcharge factor by a minimum of 8% and a maximum of 35% for each additional claim.

For example, the maximum surcharge for four claims would be [1 + 146%] x [1 + 35%] - 1 = 232%. The surcharge range for four claims is 20% to 232%, for five claims, it is 29% to 348%, etc.

### What Are Your Options?

You have the right to ask us for the reason(s) behind any increase in the premium for your policy caused in whole or in part by a claim under your Homeowners policy. Contact your Allstate representative, and we will provide you with that information.

### Questions? Please Contact Us

If you have any questions about how claims impact your premium or about your Homeowners coverage in general, please contact your Allstate representative.

**X73872**

## Other Allstate Companies Also Offer Homeowners Insurance—Giving You Additional Protection Options

We want to make sure you know that Homeowners insurance is available from different Allstate-branded companies—each with its own mix of price and coverage options. Although your current policy is with Allstate Insurance Company, Homeowners coverage from another Allstate-branded company can differ from your current policy in a number of ways, including:

- Price
- Coverage
- Features
- Discounts

## Things To Consider When Comparing Insurance Policies

When comparing different policies, you may want to consider the following:

- **Price** – While another company may offer a lower premium today, the premium could change in the future. Be sure to consider this.
- **Policy Features and Benefits** – Some of the policy features and benefits that your current policy has may not be available or carry over to the new company. Also, the new policy might not provide the same level of benefits as your current policy. And if you leave Allstate Insurance Company, you will not be able to return to that company or get the same rate.

## Your Allstate Agent Can Help

Your Allstate Agent is here and can discuss any options you might be interested in. We want to thank you again for choosing Allstate to protect what's important to you.

## A Brief Reminder

As you consider this information, keep in mind that there is a tool that insurance companies use to estimate home replacement cost called Residential Component Technology™ (RCT).

If you request a quote from another Allstate-branded company, they may use RCT to estimate your home's replacement value. Even if you stay with your current company, you can request that we use RCT to estimate the replacement cost of your home. This can help you confirm that your home is insured for an amount that reflects its current estimated replacement value.

If you'd like to know more about RCT, please contact your Allstate Agent.

**X73084v2**

0010070 037 25060553302418 0000009082345422506055302418PRO
PKCR18PA20250605225041 01A-000155-004-0-00-00

Case ID: 260800103

# Privacy Statement

Policy number: **908 234 542**

Policy effective date: July 21, 2025



Allstate.

## Facts What does Allstate do with your personal information?

**Why?** Financial companies choose how they share your personal information. Federal and state laws give consumers the right to limit some but not all sharing. These laws also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

**What?** The types of personal information we collect and share depend on the product or service you have with us. This information can include:

- Name, phone number, home and email addresses, and other contact information, marital status, and family member information
- Social Security number, driver's license number, and driving records
- Healthcare information, customer file including claims and transaction history, credit information, and credit scores

**How?** Financial companies need to share customers' and former customers' personal information to run their everyday business. In the section below, we list the reasons companies can share their customers' personal information; the reasons Allstate chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Allstate share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** — such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, prevent fraud, or report to credit bureaus | Yes | No |
| **For our marketing purposes** — to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** — information about your transactions and experiences | Yes | No |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | No | No |

## Limit sharing

Call 1-800-856-2518 and our menu will prompt you through your choice(s)

Visit us online: allstate.com

Please note: If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice. When you are no longer our customer, we continue to share your information as described in this notice, however, you can contact us at any time to limit our sharing. **If you have previously opted out, your request remains on file and you do not need to opt out again.**

## Questions?

Call 1-800-856-2518 or for more information about our privacy practices, visit us online at allstate.com/privacy to view our Online Privacy Statement.

## Who we are

This Privacy Statement describes the privacy practices of Allstate Insurance Company and its Allstate branded auto, home and business insurance affiliates. For additional information about affiliates, see below and go to the Underwriting Companies link on Allstate.com.

## What we do

### How does Allstate protect my personal information?

We use a variety of physical, technical and administrative security measures that help to safeguard your personal information. We require our employees and persons or organizations that represent us to protect your information and keep it confidential.

### How does Allstate collect my personal information?

We collect your personal information, for example, when you

- Apply for insurance or give us your contact information
- Pay your insurance premium or file an insurance claim

We also collect your personal information from others, such as affiliates, credit bureaus, and insurance support organizations (which may retain and share your information with others).

### Why can't I limit all sharing?

Federal and state law only gives you the right to limit

- Affiliates from using your information to market to you
- Sharing for nonaffiliates to market to you

State laws may give you additional rights to limit sharing. See below for more on those rights.

### How else does Allstate use and share personal information?

We will also disclose your personal information without notice when necessary to: (a) comply with the law or requests from regulatory and law enforcement authorities; (b) protect and defend our customers, rights or property; (c) act under exigent circumstances to protect the personal safety of our customers or the public; (d) transfer corporate ownership; (e) conduct research, actuarial studies or audits; and (f) allow an insurance institution, producer, medical institution/professional or support organization to process insurance claims, verify coverage or benefits or perform other insurance functions. We will not use your medical information for marketing purposes without your consent.

### What happens when I limit sharing for an account I hold jointly with someone else?

Your choices will apply to everyone on your account.

### How can I review or correct my data?

You may access your recorded personal information under our possession and to request a correction, amendment, or deletion of such recorded personal information by sending a request to Allstate Insurance Company Customer Privacy Inquiries, PO Box 660 598, Dallas, TX 75266-0598. We may not be able to provide information relating to investigations, claims, litigation, and other matters.

## Definitions

**Affiliates —** Companies related by common ownership or control including Allstate insurance companies offering home, auto and business insurance; Allstate Assurance Company and their life and retirement affiliates; Allstate Financial Services; American Heritage Life Insurance Company (Allstate Benefits), Allstate roadside services and motor club companies and Signature roadside services and motor club companies, Allstate Dealer Services, National General Insurance Group and its affiliates, Castle Key Insurance Company and Castle Key Indemnity Company, North Light Specialty Insurance Company, SquareTrade (Allstate Protection Plans), InfoArmor (Allstate Identity Protection), Avail, and Arity.

**Nonaffiliates —** Companies not related by common ownership or control. They can be financial and nonfinancial companies. Allstate does not share your information with nonaffiliates for marketing purposes.

**Joint Marketing —** A formal agreement between nonaffiliated financial companies that together market financial products or services to you.

## Other important information

We reserve the right to change our privacy practices, procedures, and terms.

(ed. 10/2022) **X73180v7**

0010070 037 2506055302418 0000009082345422506055302418PRO
PKR18PA20250605225041O1A-000155-005-0-00-00

# Allstate Insurance Company Standard Select Value Homeowners Policy

**PENNSYLVANIA**

**Allstate Insurance Company**
**The Company Named in the Policy Declarations**
**A Stock Company---Home Office: Northbrook, Illinois 60062**



**AP326-1**
**(5/94)**

## Table of Contents


### General

2 Definitions Used In This Policy
4 Insuring Agreement
4 Agreements We Make With You
4 Conformity To State Statutes
4 Coverage/Premium Changes
5 Policy Transfer
5 Continued Coverage After Your Death
5 Cancellation
5 Concealment Or Fraud

### Section I— Your Property

#### Coverage A
#### Dwelling Protection

6 Property We Cover Under Coverage A
6 Property We Do Not Cover Under Coverage A

#### Coverage B
#### Other Structures Protection

6 Property We Cover Under Coverage B
6 Property We Do Not Cover Under Coverage B

#### Coverage C
#### Personal Property Protection

6 Property We Cover Under Coverage C
6 Limitations On Certain Personal Property
7 Property We Do Not Cover Under Coverage C
8 Losses We Cover Under Coverages A, B and C
9 Losses We Do Not Cover Under Coverages A, B and C

#### Additional Protection

10 Additional Living Expense
11 Credit Card and Check Forgery
11 Debris Removal
11 Emergency Removal Of Property
11 Fire Department Charges
11 Temporary Repairs After A Loss
12 Trees, Shrubs, Plants and Lawns
12 Temperature Change
12 Arson Reward
12 Land

### Section I Conditions

12 Deductible
12 Insurable Interest and Our Liability
13 What You Must Do After A Loss
13 Our Settlement Options
13 How We Pay For A Loss
16 Our Settlement Of Loss
16 Appraisal
16 Abandoned Property
16 Permission Granted To You
16 Our Rights To Recover Payment
16 Our Rights To Obtain Salvage
16 Suit Against Us
17 Loss To A Pair Or Set
17 Glass Replacement
17 No Benefit To Bailee
17 Other Insurance
17 Mortgagee

### Section II— Family Liability and Guest Medical Protection

#### Coverage X
#### Family Liability Protection

17 Losses We Cover Under Coverage X
18 Losses We Do Not Cover Under Coverage X

#### Coverage Y
#### Guest Medical Protection

19 Losses We Cover Under Coverage Y
20 Losses We Do Not Cover Under Coverage Y




Case ID: 260800103

***Additional Protection***

21 Claim Expenses
22 Emergency First Aid
22 Damage To Property Of Others

***Section II Conditions***

22 What You Must Do After An Accidental Loss
22 What An Injured Person Must Do—Coverage Y — Guest Medical Protection
23 Our Payment Of Loss—Coverage Y— Guest Medical Protection
23 Our Limits Of Liability
23 Bankruptcy
23 Our Rights To Recover Payment—Coverage X — Family Liability Protection
23 Suit Against Us
23 Other Insurance—Coverage X—Family Liability Protection

***Section III — Optional Protection***

***Optional Coverages You May Buy***

23 Coverage DP
Increased Coverage On Electronic Data Processing Equipment
24 Coverage F
Fire Department Charges
24 Coverage G
Loss Assessments
24 Coverage J
Extended Coverage On Jewelry, Watches and Furs
25 Coverage K
Incidental Office, Private School Or Studio
25 Coverage LR
Lock Replacement
25 Coverage M
Increased Coverage On Money
25 Coverage P
Business Pursuits
26 Coverage S
Increased Coverage On Securities
26 Coverage SD
Satellite Dish Antennas
26 Coverage SE
Portable Cellular Communication Systems
26 Coverage ST
Increased Coverage On Theft Of Silverware


## *Definitions Used In This Policy*

1. "**You**" or "**your**" — means the person named on the Policy Declarations as the insured and that person's resident spouse.

2. "**Allstate**," "**we**," "**us**," or "**our**" — means the company named on the Policy Declarations.

3. "**Insured person(s)**" — means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any dependent person in **your** care.

   Under **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection**, "**insured person**" also means:
   c) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
   d) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

4. "**Bodily injury**" — means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV)

or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

Under **Coverage Y — Guest Medical Protection**, **bodily injury** means physical harm to the body, including sickness or disease, except that **bodily injury** does not include:

a) any venereal disease;
b) Herpes;
c) Acquired Immune Deficiency Syndrome (AIDS);
d) AIDS Related Complex (ARC);
e) Human Immunodeficiency Virus (HIV)

or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

5. "**Building structure**" — means a structure with walls and a roof.

6. "**Business**" — means:
   a) any full or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**. However, the mutual exchange of home day care services is not considered a **business**;
   b) any property rented or held for rental by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
      1) it is rented occasionally for residential purposes;
      2) a portion is rented to not more than two roomers or boarders; or
      3) a portion is rented as a private garage.

7. "**Residence premises**" — means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

8. "**Insured premises**" — means:
   a) the **residence premises**; and
   b) under **Section II** only:
      1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;
      2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
      3) cemetery plots or burial vaults owned by an **insured person**;
      4) vacant land, other than farmland, owned by or rented to an **insured person**;
      5) land owned by or rented to an **insured person** where a one, two, three or four family **dwelling** is being built as that person's residence;
      6) any premises used by an **insured person** in connection with the **residence premises**;
      7) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

9. "**Occurrence**" — means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in **bodily injury** or **property damage**.

10. "**Property damage**" — means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

11. "**Residence employee**" — means an employee of an **insured person** while



Case ID: 260800103

performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

12. "**Dwelling**" — means a one, two, three or four family structure, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

13. "**Repair cost**" — means the cost to repair or replace damaged **building structures** with readily available construction materials or methods that are functionally equivalent to and less costly than obsolete, antique or custom construction materials or methods.

### *Insuring Agreement*
In reliance on the information **you** have given **us**, **Allstate** agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

### *Agreements We Make With You*
**We** make the following agreements with **you**:

### *Conformity to State Statutes*
When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

### *Coverage/Premium Changes*
When **Allstate** broadens coverage during the premium period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current premium period will be used to calculate any change in **your** premium.

**Your** premium is calculated by applying a ratio comparing the value **you** select for **your Coverage A — Dwelling Protection** limit of liability to the replacement cost of **your residence premises**. At each policy anniversary, the replacement cost amount that is used to calculate **your** premium will be revised to reflect the rate of change in the index identified on the Policy Declarations.

### *Policy Transfer*
**You** may not transfer this policy to another person without **our** written consent.

### *Continued Coverage After Your Death*
If **you** die, coverage will continue for one hundred and eighty days after **your** death or until the sale of the insured property whichever event occurs first, provided that the premiums for the coverage are paid. Coverage will continue for:
1) **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.
2) an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

### *Cancellation*
**Your** right to Cancel:
**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and is not a renewal with **us**, **we** may cancel this policy for any reason.

When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:
1) non-payment of premium;
2) the policy was obtained by material misrepresentation, fraud or concealment of material facts;
3) material misrepresentation, fraud or concealment of material facts in presenting a claim, or substantial violation of any of the policy terms;
4) there has been a substantial change or increase in hazard in the risk **we** originally accepted;
5) there is a substantial increase in hazards insured against by reason of wilful or negligent acts or omissions by the insured; or
6) any other reason approved by the Commissioner of Insurance according to rules and regulations set by the Commissioner.

**We** will give **you** at least 30 days notice before the cancellation or non-renewal takes effect. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**Allstate** has the right not to renew or continue the policy beyond the current premium period. However, **we** may do so only for one or more of the reasons set out in the "**Our** Right to Cancel" section. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the premium period.

### *Concealment Or Fraud*
This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

# Section I — Your Property

## *Coverage A*
## *Dwelling Protection*

### *Property We Cover Under Coverage A:*

1. **Your dwelling** including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

### *Property We Do Not Cover Under Coverage A:*

1. Any structure including fences or other property covered under **Coverage B — Other Structures Protection**.

2. Land, except as specifically provided in **Section I — Additional Protection** under item 10, "Land."

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

## *Coverage B*
## *Other Structures Protection*

### *Property We Cover Under Coverage B:*

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. Structures attached to **your dwelling** by only a fence, utility line or similar connection.

3. Construction materials and supplies at the address of the **residence premises** for use in connection with other structures.

### *Property We Do Not Cover Under Coverage B:*

1. Structures used in whole or in part for **business** purposes.

2. Any structure or other property covered under **Coverage A — Dwelling Protection**.

3. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

4. Construction materials and supplies at the address of the **residence premises** for use in connection with the **dwelling**.

5. Satellite dish antennas and their systems whether or not attached to **building structures**.

## *Coverage C*
## *Personal Property Protection*

### *Property We Cover Under Coverage C:*

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located at a residence other than the **residence premises**, coverage is limited to 10% of **Coverage C — Personal Property Protection**. This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there or to personal property in student dormitory, fraternity or sorority housing.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### *Limitations On Certain Personal Property:*

Limitations apply to the following groups of personal property. If personal property can reasonably be considered as part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Coverage C — Personal Property Protection**. The total amount of coverage for each group in any one loss is as follows:



Case ID: 260800103

1. $ 100 — Money, bullion, bank notes, coins and other numismatic property.

2. $ 500 — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, and stamps, including philatelic property.

3. $ 500 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts and motors.

4. $ 500 — Trailers not used with watercraft.

5. $ 500 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, platinum and furs, including any item containing fur which represents its principal value.

6. $ 1,000 — Theft of silverware, pewterware and goldware.

7. $ 1,000 — Trading cards, subject to a maximum amount of $250 per card.

8. $ 1,000 — Theft of firearms.

9. $ 1,000 — Manuscripts, including documents stored on electronic media.

10. $ 500 — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

11. $ 3,000 — Electronic data processing equipment and the recording or storage media used with that equipment. Recording or storage media will be covered only up to:
    a) the retail value of the media, if pre-programmed; or
    b) the retail value of the media in blank or unexposed form, if blank or self-programmed.

12. $10,000 — Theft of rugs, including, but not limited to any handwoven silk or wool rug, carpet, tapestry, wall-hanging or other similar article whose principal value is determined by its color, design, quality of wool or silk, quality of weaving, condition or age; subject to a maximum amount of $2,500 per item.

### *Property We Do Not Cover Under Coverage C:*

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the handicapped or used solely for the service of the **insured premises** and not licensed for use on public roads.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.



Case ID: 260800103

5. Property of roomers, boarders, tenants not related to an **insured person**.

6. Property located away from the **residence premises** and rented or held for rental to others.

7. **Business** property whether at or away from the **residence premises**.

8. Property held as samples or for sale or delivery after a sale.

9. Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft and while in or upon a motorized land vehicle or watercraft.

10. Satellite dish antennas and their systems.

### *Losses We Cover Under Coverages A, B and C:*

**We** will cover sudden and accidental direct physical loss to the property described in **Coverage A — Dwelling Protection**, **Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection** except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail.

   **We** do not cover:
   a) loss to the interior of a **building structure**, or covered property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
   b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises**.

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

   **We** do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

   **We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

   **We** do not cover:
   a) theft or attempted theft committed by an **insured person**;
   b) theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
   c) theft of any property while at any other residence owned, rented to or occupied



Case ID: 260800103

by an **insured person** unless the **insured person** is temporarily residing there;

d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**;

e) theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

10. Breakage of glass which is part of the covered **building structure**. **We** pay a maximum of $50 for each **occurrence**.

    **We** do not cover loss to glass if the covered **building structure** has been vacant for more than 30 consecutive days prior to the loss.

### *Losses We Do Not Cover Under Coverages A, B and C:*

**We** do not cover loss to the property described in **Coverage A — Dwelling Protection**, **Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection** caused by or consisting of:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflow from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other structure or land at the **residence premises**.

   **We** do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. War or warlike acts, including, but not limited to insurrection, rebellion or revolution.

12. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

13. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance

    of property whether on or off the **residence premises** by any person or organization.

14. **We** do not cover loss to covered property described in **Coverage A — Dwelling Protection**, **Coverage B — Other Structures Protection** or **Coverage C — Personal Property Protection** when:
    a) there are two or more causes of loss to the covered property; and
    b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 13 above.

## *Additional Protection*

1. **Additional Living Expense**
    a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

       Payment for covered additional living expense will be limited to the least of the following:
       1) the time period required to repair or replace the property **we** cover, using due diligence and dispatch; or
       2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
       3) 12 months.
    b) **We** will pay **your** lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss **we** cover makes the part of the **residence premises you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months.
    c) **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a peril **we** insure against.

    These periods of time are not limited by the termination of this policy.

    **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

    No deductible applies to this protection.

2. **Credit Card and Check Forgery**
**We** will pay for loss:
a) that an **insured person** is legally required to pay for the unauthorized use of any credit card issued to or registered in the name of an **insured person**;
b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account.

**Our** maximum limit of liability for any one loss is $1,000. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

**We** do not cover:
a) loss arising from any **business** of an **insured person**;
b) loss caused by or at the direction of an **insured person** or any other person who has been entrusted with any credit card;
c) loss arising out of dishonesty of an **insured person**.

When loss is discovered, the **insured person** must give **us** immediate written notice. If the loss involves a credit card or charge plate the **insured person** must also give immediate written notice to the company or bank that issued the card or plate. Failure to comply with the terms and conditions of the card or plate voids this protection.

**We** will pay only for loss occurring during the policy period, including those losses discovered and reported to **us** within one year after the policy has terminated. **We** have the right to investigate and settle any claim or suit as **we** deem appropriate. Full payment of the amount of insurance for any one loss ends **our** obligation under each claim or suit arising from the loss.

**We** will defend any suit brought against an **insured person** for the enforcement of payment covered under paragraph 2(a) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

**We** have the option to defend an **insured person** or the **insured person's** bank against a suit for the enforcement of payment covered under paragraph 2(b) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

No deductible applies to this protection.

3. **Debris Removal**
**We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
**We** will pay for sudden and accidental physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
**We** will pay up to $250 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**. No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
**We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect the covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.



Case ID: 260800103

7. **Trees, Shrubs, Plants and Lawns**
**We** will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under **Coverage A — Dwelling Protection** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. **We** will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft or collapse of a **building structure** or any part of a **building structure**.

**We** will pay up to $500 per **occurrence** for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for direct loss caused by windstorm, hail, or weight of ice, snow or sleet if:
a) The fallen tree causes damage to property covered under the **Dwelling Protection** coverage; or

b) The windstorm, hail or weight of ice, snow or sleet causes damage to property covered under the **Dwelling Protection** coverage and the Pennsylvania Governor declares the area in which the **residence premises** is located to be a disaster area due to such weather conditions.

**We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

8. **Temperature Change**
**We** will pay for loss to covered personal property in a **building structure** at the **residence premises** resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure**.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Arson Reward**
**We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

10. **Land**
If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

The **Section I — Losses We Do Not Cover Under Coverages A, B and C** reference to earth movement does not apply to the loss of land stability provided under this **Additional Protection**.

## Section I Conditions

1. **Deductible**
**We** will pay only when a covered loss exceeds the deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2. **Insurable Interest and Our Liability**
In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss**
In the event of a loss to any property that may be covered by this policy, **you** must:
a) promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card or charge plate, give written notice to the company or bank that issued the card or plate.
b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.
f) as often as **we** reasonably require:
    1) show **us** the damaged property.
    2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
    3) produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person's** power to do so; and
g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:
    1) the date, time, location and cause of loss;
    2) the interest **insured persons** and others have in the property, including any encumbrances;
    3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
    4) any other insurance that may cover the loss;
    5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
    6) at **our** request, the specifications of any damaged **building structure** or other structure;
    7) evidence supporting any claim under the Credit Card or Check Forgery protection. State the cause and amount of loss.

4. **Our Settlement Options**
In the event of a covered loss, **we** have the option to:
a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5. "How We Pay For A Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss **we** will notify **you** of the option or options **we** intend to exercise.

5. **How We Pay For A Loss**
Under **Coverage A — Dwelling Protection**, **Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection**, payment for covered loss will be by one or more of the following methods:
a) Select Value. When the main **dwelling** where **you** reside at the **residence premises** is a total loss, and **you** decide not to repair or replace at the **residence premises**, **we** will pay the limit of liability

as shown on the Policy Declarations for **Coverage A — Dwelling Protection**.

b) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:
   1) the whole amount of loss for property covered under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision; or
   2) the whole amount of loss for property covered under **Coverage C — Personal Property Protection** without deduction for depreciation, is less than $2,500 and if **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

c) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

   **You** may make claim for additional payment as described in paragraph "d" and paragraph "e", if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

d) Building Structure Reimbursement. Under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss.

   Building Structure Reimbursement will not exceed the smallest of the following amounts:
   1) The **repair cost** of that part of the damaged **building structure** on the **residence premises**; or
   2) The amount actually and necessarily spent to repair or replace damaged **building structures** with readily available construction materials or methods that are functionally equivalent to and less costly than obsolete, antique or custom construction materials or methods; or
   3) The limit of liability applicable to the **building structure** as shown on the Policy Declarations for **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection**.

   The type of repair or replacement materials shall be agreed upon by **you** and **us**. If **you** and **we** cannot agree, settlement will be on an actual cash value basis described in paragraph "c" above.



Case ID: 260800103

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1) property covered under **Coverage C — Personal Property Protection**;
2) property covered under **Coverage B — Other Structures Protection** that is not a **building structure**;
3) land.

Payment under "a", "b", "c", or "d" above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

e) Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Coverage C — Personal Property Protection**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the limit of liability shown on the Policy Declarations for **Coverage C — Personal Property Protection**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection**, except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to memorabilia, souvenirs and collector’s items; or
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.



Case ID: 260800103

6. **Our Settlement Of Loss**
**We** will settle any covered loss with **you** unless another payee is named in the policy. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award or a court judgment.

7. **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us**, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

9. **Permission Granted To You**
a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant.
b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Rights To Recover Payment**
When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11. **Our Rights To Obtain Salvage**
**We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

12. **Suit Against Us**
No suit or action may be brought against **us** unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.



Case ID: 260800103

13. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, **we** may:
a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

16. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

17. **Mortgagee**
A covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:
a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
b) pay upon demand any premium due if an **insured person** fails to do so;
c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d) give **us** the mortgagee's right of recovery against any party liable for loss; and
e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

# Section II — Family Liability and Guest Medical Protection

## *Coverage X*
## *Family Liability Protection*

### *Losses We Cover Under Coverage X:*
Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or



Case ID: 260800103

fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

### *Losses We Do Not Cover Under Coverage X:*

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her own conduct;
   b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3. **We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn and garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

   This exclusion does not apply to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** or **property damage** arising out of:
   a) the negligent supervision by an **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** or **property damage** arising out of, consisting of or caused by the ingestion, inhalation or absorption of lead in any form.

9. **We** do not cover any **bodily injury** or **property damage** arising out of, consisting of or caused by the discharge, dispersal, release or escape of asbestos and radon gas.

   **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

10. **We** do not cover any **bodily injury** or **property damage** arising out of, consisting of or caused by the discharge, dispersal, release or escape of oil from storage tank(s) located at the address stated on the Policy Declarations.

    **We** do cover **bodily injury** and **property damage** which results from such discharge if the discharge is sudden and accidental.

11. **We** do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner consisting of or caused by the discharge, dispersal, release or escape of lead, asbestos, radon gas or oil from storage tank(s) located at the address stated on the Policy Declarations.

    This exclusion does not apply to **bodily injury** or **property damage** losses otherwise covered in this policy.

12. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

13. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

    **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

14. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

15. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not apply if the **property damage** is caused by fire, explosion or smoke.

16. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

17. **We** do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

## *Coverage Y*
## *Guest Medical Protection*

### *Losses We Cover Under Coverage Y:*
**Allstate** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic



Case ID: 260800103

devices, eye glasses, hearing aids, and pharmaceuticals. These expenses, except for funeral services, must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**;
   d) is sustained by a **residence employee**.

### *Losses We Do Not Cover Under Coverage Y:*

1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her own conduct;
   b) such **bodily injury** is of a different kind or degree than that intended or reasonably expected; or
   c) such **bodily injury** is sustained by a different person than that intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;

b) is a sailing vessel 26 feet or more in length;
c) is powered by one or more outboard motors with more than 25 total horsepower;
d) is designated as an airboat, air cushion, or similar type of watercraft; or
e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** arising out of, consisting of or caused by the ingestion, inhalation or absorption of lead in any form.

9. **We** do not cover any **bodily injury** arising out of, consisting of or caused by the discharge, dispersal, release or escape of asbestos and radon gas.

   **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

10. **We** do not cover any **bodily injury** arising out of, consisting of or caused by the discharge, dispersal, release or escape of oil from storage tank(s) located at the address stated on the Policy Declarations.

    **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

11. **We** do not cover **bodily injury** arising out of the rendering of, or failure to render professional services by, an **insured person**.

12. **We** do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person**.

    **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

13. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

14. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

15. **We** do not over **bodily injury** caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

## *Additional Protection*

**We** will pay, in addition to the limits of liability:

1. **Claim Expenses**
   **We** will pay:
   a) all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;



Case ID: 260800103

c) premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
d) up to $100 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
e) any other reasonable expenses incurred by an **insured person** at **our** request.

2. **Emergency First Aid**
**We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
At **your** request, **we** will pay up to $250 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.
**We** will not pay for **property damage**:
a) to property covered under **Section I** of this policy;
b) to property intentionally damaged by an **insured person** who has attained the age of 13;
c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
d) arising out of:
   1) past or present **business** activities;
   2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
   3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

## Section II Conditions

1. **What You Must Do After An Accidental Loss**
In the event of **bodily injury** or **property damage**, **you** must do the following:
a) Promptly notify **us** or **our** agent stating:
   1) **your** name and policy number;
   2) the date, the place and the circumstances of the loss;
   3) the name and address of anyone who might have a claim against an **insured person**;
   4) the names and addresses of any witnesses.
b) Promptly send **us** any legal papers relating to the accident.
c) At **our** request, an **insured person** will:
   1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
   2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
   3) attend any hearing or trial.
d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do — Coverage Y — Guest Medical Protection**
If someone is injured, that person, or someone acting for that person, must do the following:
a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.



Case ID: 260800103

b) Give **us** written authorization to obtain copies of all medical records and reports.
c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment Of Loss — Coverage Y — Guest Medical Protection**
**We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**
Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Coverage X — Family Liability Protection** for damages resulting from one **occurrence** will not exceed the limit shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

**Our** total liability under **Coverage Y — Guest Medical Protection** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" limit shown on the Policy Declarations.

5. **Bankruptcy**
**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights To Recover Payment — Coverage X — Family Liability Protection**
When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Suit Against Us**
a) No suit or action can be brought against **us** unless there has been full compliance with all the terms of this policy.
b) No suit or action can be brought against **us** under **Coverage X — Family Liability Protection** until the obligation of an **insured person** to pay is finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person, and **us**.
c) No one shall have any right to make **us** a party to a suit to determine the liability of an **insured person**.

8. **Other Insurance — Coverage X — Family Liability Protection**
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## *Section III — Optional Protection*

### *Optional Coverages You May Buy*

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms and conditions of the specific Optional Coverage.

1. **Coverage DP**
**Increased Coverage On Electronic Data Processing Equipment**
The $3,000 limitation on electronic data processing equipment under **Coverage C — Personal Property Protection**, and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.



Case ID: 260800103

2. **Coverage F**
**Fire Department Charges**
The $250 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

3. **Coverage G**
**Loss Assessments**
If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

**We** will pay **your** share of any special assessments charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:
a) sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or
b) **bodily injury** or **property damage** covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

**Allstate** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Section I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

4. **Coverage J**
**Extended Coverage On Jewelry, Watches and Furs**
**Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
b) furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Coverage C — Personal Property Protection**. However, in no event will coverage be less than would have applied in the absence of **Coverage J**.

**We** do not cover loss caused by or consisting of:
a) intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
    1) may be reasonably expected to result from such acts; or
    2) is the intended result of such acts.
b) wear and tear, gradual deterioration, inherent vice, insects or vermin;
c) nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not



Case ID: 260800103

considered a loss by fire, explosion or smoke.

**We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

d) war or warlike acts, including, but not limited to insurrection, rebellion or revolution;
e) failure by any **insured person** to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss **we** cover.

Any deductible shown on the Policy Declarations applicable to **Coverage C — Personal Property Protection**, also applies to a loss under this coverage.

5. **Coverage K**
**Incidental Office, Private School Or Studio**
a) **Coverage C — Personal Property Protection** is extended to cover equipment, supplies and furnishings used in a described office, private school or studio at **your residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

The **Coverage K** limits are shown on the Policy Declarations. The first limit applies to property on the **residence premises**. The second limit applies to property while away from the **residence premises**. The increased coverage does not include property held for sample, sale or delivery after sale.

b) **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection** are extended to cover a described office, private school or studio occupied by an **insured person**. The occupancy of the described property shall not be considered a **business**.

**We** do not cover **bodily injury** to:
a) any employee other than a **residence employee**; or
b) any person arising out of corporal punishment administered by or at the direction of an **insured person**.

6. **Coverage LR**
**Lock Replacement**
**Coverage A — Dwelling Protection** is extended to include reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality. Coverage is provided when a key to a lock is stolen as part of a covered theft loss. The limit of liability under this coverage following any one theft loss is $250.

7. **Coverage M**
**Increased Coverage On Money**
The $100 limitation on money, bullion, bank notes, coins and other numismatic property under **Coverage C — Personal Property Protection** is increased to the amount shown on the Policy Declarations.

8. **Coverage P**
**Business Pursuits**
**Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection** are extended to cover specified **business** pursuits of an **insured person**.

**We** do not cover:
a) **bodily injury** or **property damage** arising out of the **business** pursuits of an **insured person** when the **business** is owned or financially controlled by the **insured person**. This also means a partnership or joint venture of which an **insured person** is a partner or member;
b) **bodily injury** or **property damage** arising out of the rendering or failure to

render a professional service of any nature, other than teaching;

c) **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;

d) **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or

e) **bodily injury** to any person arising out of corporal punishment administered by or at the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

9. **Coverage S**
**Increased Coverage On Securities**
The $500 limitation on accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, or stamps, including philatelic property, covered under **Coverage C — Personal Property Protection**, is increased to the amount shown on the Policy Declarations.

10. **Coverage SD**
**Satellite Dish Antennas**
**Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on **your residence premises**, subject to the provisions of **Coverage C** — Personal Property Protection.

The amount of coverage is shown on the Policy Declarations.

11. **Coverage SE**
**Portable Cellular Communication Systems**
**Coverage C — Personal Property Protection** is extended to portable cellular communication systems in or upon a motorized land vehicle or watercraft. This coverage applies only to portable systems that can be powered by electricity from a motorized land vehicle or watercraft. Coverage applies whether or not the portable cellular communication system is used in a **business**.

The amount of coverage is shown on the Policy Declarations.

12. **Coverage ST**
**Increased Coverage On Theft Of Silverware**
The $1,000 limitation on theft of silverware, pewterware and goldware under **Coverage C — Personal Property Protection** is increased to the amount shown on the Policy Declarations.



Case ID: 260800103

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the declarations page by an authorized agent of **Allstate**.

Secretary

President,
Personal Property & Casualty

# Policy Endorsement

***The following endorsement changes your policy. Please read this document carefully and keep it with your policy.***

## Pennsylvania
## Standard Select Value Homeowners Policy
## Amendatory Endorsement – AP1299-2

This endorsement amends your Standard Select Value Homeowners Policy and is in addition to all other amendatory endorsements which apply to this policy.

I. The following provisions are added to the **General** section:

**What Law Will Apply**
This policy is issued in accordance with the laws of Pennsylvania and covers property or risks principally located in Pennsylvania. Subject to the following paragraph, the laws of Pennsylvania shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside Pennsylvania, claims or disputes regarding that covered loss to property, or any other covered **occurrence** may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

**Where Lawsuits May Be Brought**
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in Pennsylvania. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in Pennsylvania, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside Pennsylvania, lawsuits regarding that covered loss to property, or any other covered **occurrence** may also be brought in the judicial district where that covered loss to property, or any other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

II. In **Section I - Your Property**, under **Losses We Do Not Cover Under Coverages A, B and C,** the following changes are made:

A. The following is added to item 9:

This exclusion does not apply to loss caused by **you**, or any other person insured under this policy, who is an innocent victim of domestic abuse.

B. The following is added:

15. Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

    This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions - Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**.

III. In **Section I - Your Property**, under **Additional Protection - Additional Living Expense** is replaced by the following:

1. **Additional Living Expense**
   a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Coverage A -Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions - Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**.

      Payment for additional living expense as a result of a covered loss under **Coverage A -Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C -Personal Property Protection** will be limited to the least of the following:
      1) the time period required to repair or replace the property **we** cover, using due diligence and dispatch; or
      2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere;
      3) 12 months.

   b) **We** will pay **your** lost fair rental income resulting from a covered loss under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection,** less charges and expenses which do not continue, when a loss **we** cover under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection,** makes the part of the **residence premises you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months. However, payments for **your** lost fair rental income expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions - Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

   c) **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a peril **we** insure against. However, payments for

increase in living expenses or **your** lost fair rental income expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions - Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**.

These periods of time are not limited by the termination of this policy.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

IV. In **Section I - Conditions**, under item 5, **How We Pay For A Loss**, sub-item d) Building Structure Reimbursement, the first paragraph is replaced by the following:

d) Building Structure Reimbursement. Under **Coverage A - Dwelling Protection** and **Coverage B - Other Structures Protection**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss.

This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions - Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**, and shall not be payable for any losses excluded in **Section I - Your Property**, under **Losses We Do Not Cover Under Coverages A, B and C**, item 15.

V. In **Section I - Conditions**, the following is added:

18. **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**

In the event of a covered water loss under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection, we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation**.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection**, or **Coverage C - Personal Property Protection** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection.**

VI. In **Section II - Family Liability and Guest Medical Protection**, under **Losses We Do Not Cover Under Coverage X**, the following is added:

18. **We** do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

19. **We** do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

VII. In **Section II - Family Liability and Guest Medical Protection**, under **Losses We Do Not Cover Under Coverage Y**, the following is added:

16. **We** do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

All other policy terms and conditions apply.

## Allstate Indemnity Company

# Policy Endorsement

***This Endorsement Changes Your Policy–Keep It With Your Policy***

## Amendment of Policy Provisions – AP4664-1

I. The **General** section is amended as follows:

A. Under the provision titled **Cancellation**, the following is added:

Any unearned premium amounts under $2.00 will be refunded only upon **your** request.

B. The following provisions are added:

**Conditional Reinstatement**
If **we** mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice **we** issue which waives the cancellation or reinstates coverage is void. This means that **Allstate** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

**Payment**
If at any time, **your** payment of any premium amount due is made by check, electronic transaction, or other remittance which is not honored because of insufficient funds or a closed account; **you** will be charged a fee.

All other terms and conditions of the policy apply.

# Policy Endorsement

***The following endorsement changes your policy. Please read this document carefully and keep it with your policy***

## Sinkhole Activity Coverage Endorsement – AP4869

When this endorsement applies, the following coverage is added:

**Sinkhole Activity Coverage**
**We** will cover sudden and accidental direct physical loss to the **dwelling** or other **building structure** covered under **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** caused by **sinkhole activity** or **catastrophic ground cover collapse**, including the expenses incurred to:
a) stabilize the land and **dwelling** or other **building structure**; and
b) repair the foundation of the **dwelling** or other **building structure**.

Payment for **sinkhole loss** caused by **sinkhole activity** or **catastrophic ground cover collapse** will be paid pursuant to **Section I Conditions** item 5. **How We Pay For A Loss**. Reimbursement for additional living expenses incurred due to **sinkhole loss** will be paid pursuant to **Section I Additional Protection**, item 1. **Additional Living Expense**.

If all the following apply:
a) **you** submit a claim for **sinkhole loss** without good faith grounds for submitting such claim;
b) **you** demand testing by a professional engineer or geologist to determine the presence or absence of **sinkhole loss**;
c) before ordering testing by a professional engineer or geologist, **we** inform **you** in writing of **your** potential liability for reimbursement for **sinkhole loss** testing and **we** give **you** the opportunity to withdraw **your** claim for **sinkhole loss**; and
d) **we** obtain written certification from a professional engineer or geologist that there is no **sinkhole loss** or that the cause of the damage was not **sinkhole activity**;

then **you** must reimburse us for 50% of the actual costs of such testing, up to $5,000 with respect to any such claim.

If we deny **your** sinkhole claim without having a professional engineer or geologist perform testing to determine the presence or absence of **sinkhole loss** or other cause of damage, **you** may demand testing in writing within 60 days after **you** receive notification that **your** sinkhole claim has been denied. **You** must pay the lesser of 50% or $5,000 of the actual costs of the analyses and services, which will be reimbursed if the professional engineer or geologist provides written certification that there is **sinkhole loss**.

We will cover sudden and accidental direct physical loss to property **we** cover under **Coverage C—Personal Property Protection c**aused by **sinkhole activity**. **We** do not cover losses caused by **sinkhole activity** under **Coverage C—Personal Property Protection** unless the **sinkhole activity** causes **structural damage** to the **dwelling**, including the foundation, that **we** cover under **Coverage A—Dwelling Protection**.



Case ID: 260800103

For the purposes of this endorsement, the following changes are made to your policy:

I. In the **General** section, under **Definitions Used In This Policy**, the following definitions are added:

"**Sinkhole activity**" **—** means settlement or systematic weakening of the earth supporting the **dwelling** or other **building structure** covered under **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection**, but only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on limestone or similar rock formations.

"**Catastrophic ground cover collapse**" **—** means geological activity arising out of **sinkhole activity** that results in all the following:

a) the abrupt collapse of the ground cover;
b) a depression in the ground cover clearly visible to the naked eye;
c) **structural damage** to the **dwelling** or other **building structure**, including the foundation, that **we** cover under **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection**; and
d) that **dwelling** or other **building structure** being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order.

"**Sinkhole loss**" **—** means **structural damage** to the **dwelling** or other **building structure**, including the foundation, that **we** cover under **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection**, caused by **sinkhole activity** or **catastrophic ground cover collapse**.

**Sinkhole loss** does not mean loss consisting of or caused by man-made conditions including, but not limited to, mine subsidence, hydraulic fracturing, the collapse of storm and sewer drains, or the collapse of rapid transit tunnels.

"**Structural damage**" **—** means the **dwelling** or other **building structure** that **we** cover under **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection**, regardless of the date of construction, has experienced the following:

a) Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Pennsylvania Uniform Construction Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Pennsylvania Uniform Construction Code;
b) Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Pennsylvania Uniform Construction Code, which results in settlement related damage to the **primary structural members** or **primary structural systems** that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those **primary structural members** or **primary structural systems** exceeds one and one-third the nominal strength allowed under the Pennsylvania Uniform Construction Code for new buildings of similar structure, purpose, or location;
c) Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical **primary structural members** to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined in the Pennsylvania Uniform Construction Code; or
d) Damage that results in the building, or any portion of the building containing **primary structural members** or **primary structural systems**, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined in the Pennsylvania Uniform Construction Code.

"**Primary structural member**" **—** means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

"**Primary structural system**" **—** means an assemblage of **primary structural members**.

"**Rebate**" **—** means a remuneration, payment, gift, discount, or transfer or any item of value to **you** by or on behalf of a person performing repairs as an incentive or inducement to obtain repairs performed by that person.

II. In **Section I—Your Property**, under **Losses We Do Not Cover Under Coverages A, B and C**, **B**, item 5. is replaced by the following:

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   However, **we** will not apply this exclusion to sudden and accidental direct physical loss to the **dwelling** or other **building structures** covered under **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** which consists of, or is caused by **sinkhole activity** or **catastrophic ground cover collapse**.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

III. In Section I Conditions, under condition 5. How We Pay For A Loss, the following is added to the Building Structure Reimbursement provision:

The following subparagraphs (1) and (2) apply to Sinkhole Activity Coverage:

(1) In the event of a covered **sinkhole loss**, payment to repair, rebuild or replace the damaged or destroyed **dwelling** or other **building structure** will be on an actual cash value basis until **you** enter into a contract for the performance of building stabilization or foundation repairs. Payment on an actual cash value basis means there may be a deduction for depreciation. Once **you** enter into a contract for the performance of building stabilization or foundation repairs, **we** shall pay the additional amounts necessary to begin and perform the repairs, rebuilding or replacement of the damaged or destroyed **dwelling** or other **building structure**, including the foundation, as the work is performed and the expenses are incurred. Notwithstanding any other provision contained in this policy, **we** will not pay any amounts for underpinning or grouting until **you** enter into a contract for the performance of building stabilization or foundation repairs. The stabilization and all other repairs to the **dwelling** or other **building structure** must be completed within 12 months after **you** enter into the contract, unless:
   (a) there is mutual agreement between **you** and **us**;
   (b) the claim is in litigation; or
   (c) the claim is under appraisal or mediation.

   **You** may not accept a **rebate** from whoever performs the stabilization and repairs.



Case ID: 260800103

(2) For direct physical losses caused by **sinkhole activity**, other than total losses, payment includes the reasonable and necessary cost to replace, rebuild, stabilize or otherwise restore the earth necessary to support that part of the **dwelling** or other **building structure**, including the foundation, sustaining a covered **sinkhole loss**, but only if **you** enter into a contract to stabilize the earth and **dwelling** or other **building structure** and repair the foundation in a manner consistent with the recommendations of the engineer **we** select or approve within 90 days after **we** confirm coverage for the sinkhole loss and notify **you** of such confirmation. This time period is tolled if either party invokes the appraisal process, and begins again ten days after the conclusion of the appraisal process. Payments under such contract will be made in consultation with **you**.

**Sinkhole Activity Coverage** does not increase the limit of liability applying to the covered property.

All other terms and conditions apply.

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## Amendatory Endorsement – AP4989

Throughout the policy, when determining the actual cash value of the loss, the costs necessary to repair, rebuild or replace the destroyed, damaged or stolen property may be depreciated. Such costs subject to depreciation may include, but are not limited to, goods, materials, equipment, labor, overhead and profit, taxes, fees or similar charges.

All other policy terms and conditions apply.

Allstate Insurance Company

**Allstate Insurance Company**

P.O. Box 660636
Dallas, TX 75266
Fax: 866-447-4293
www.myclaim.com

Filed and Attested by the
Office of Judicial Records
03 AUG 2026 12:29 pm
S. GILLIAM

| | | | |
|---|---|---|---|
| Insured: | EMILY MACBLAIN | Home: | (267) 918-5793 |
| Home: | 130 SIGEL ST<br>PHILADELPHIA, PA 19148-1906 | E-mail: | EMACB223@GMAIL.COM |
| Property: | 130 SIGEL ST<br>PHILADELPHIA, PA 19148-1906 | | |
| Claim Rep.: | Chris Howard | Business: | (800) 806-5570 |
| Business: | P O Box 660636<br>Dallas, TX 75266 | E-mail: | claims@claims.allstate.com |
| Estimator: | Chris Howard | Business: | (800) 806-5570 |
| Business: | P O Box 660636<br>Dallas, TX 75266 | E-mail: | claims@claims.allstate.com |

**Claim Number:** 0820163012 **Policy Number:** 000908234542 **Type of Loss:** Windstorm and Hail

**Insurance Company:** Allstate Insurance Company

| | | | |
|---|---|---|---|
| Date Contacted: | 3/2/2026 3:27 PM | | |
| Date of Loss: | 8/1/2025 7:00 AM | Date Received: | 2/26/2026 1:14 PM |
| Date Inspected: | 3/3/2026 11:27 AM | Date Entered: | 3/2/2026 12:35 PM |
| Date Est. Completed: | 3/3/2026 3:29 PM | | |

| | |
|---|---|
| Price List: | PAPH8X_MAR26<br>Restoration/Service/Remodel |
| Estimate: | EMILY_MACBLAIN |

Allstate is dedicated to providing you with outstanding service throughout the claim-handling process. If you have any questions regarding this estimate, or if there are differences with the estimate provided by your repair person of choice, or if additional damage is found during the repair process, please contact us at (800) 806-5570. or email us at claims@claims.allstate.com. If you are emailing us, please include the Claim Number in the subject line.

Thank you,
Chris Howard

**THIS ESTIMATE REPRESENTS OUR CURRENT EVALUATION OF THE COVERED DAMAGES TO YOUR INSURED PROPERTY AND MAY BE REVISED AS WE CONTINUE TO EVALUATE YOUR CLAIM. IF YOU HAVE QUESTIONS, CONCERNS, OR ADDITIONAL INFORMATION REGARDING YOUR CLAIM, WE ENCOURAGE YOU TO CONTACT US.**



Case ID: 260800103

**Allstate Insurance Company**

P.O. Box 660636
Dallas, TX 75266
Fax: 866-447-4293
www.myclaim.com

**Grand Total Areas:**

| | | | | | |
|---|---|---|---|---|---|
| 352.00 | SF Walls | 120.00 | SF Ceiling | 472.00 | SF Walls and Ceiling |
| 120.00 | SF Floor | 13.33 | SY Flooring | 44.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 44.00 | LF Ceil. Perimeter |
| 120.00 | Floor Area | 135.11 | Total Area | 352.00 | Interior Wall Area |
| 420.00 | Exterior Wall Area | 46.67 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

# Your guide to contents depreciation recovery.

Your property policy may contain a replacement cost provision that allows for the recovery of depreciation on items that are purchased within the policy-specified timeframe. If it does, then your Adjuster Summary that accompanies this guide will show any applicable recoverable depreciation amounts.

Please make sure that the following information is addressed when submitting receipts for depreciation reimbursement consideration:

1. Receipts must be legible
2. Items on receipts should be numbered consistent with the item description on the Adjuster Summary (example below)
3. The receipt should contain: the store name, date of purchase, item descriptions and quantities, order number (for online purchases), payment method and total including any applicable taxes or shipping fees
4. Additional documentation may be required for specific purchase types. Your adjuster can help clarify what is needed for your claim

```
BIG BOX STORE 1206
1234 Any St.

Member
1234567 6FT HDMI CABLE   2     19.99
7654321 OG 65 TV         1    899.99
SUBTOTAL                      919.98
TAX                            64.40
**** TOTAL                    984.38
------------------------------------
XXXXXXXXXXXX               CHIP Read
AID:    zbZXpq5vobvz
Seq#    919434    APP#:    FMv1
VISA    Resp:   APPROVED
Tran ID#:     2538357183
Merchant ID:     125354

APPROVED - Purchase
AMOUNT :    984.38
12/09/2022 16:12:01  1206 206 256 206
------------------------------------
VISA                          984.38
CHANGE                          0.00
TAX                            64.40
TOTAL TAX                      64.40
TOTAL NUMBER OF ITEMS SOLD =    2
12/09/2022 16:12:01  1206 206 256 206

16070666391716389000
OP: 206  NAME:  SCO  LANE  #206
Thank You.
Please Come Again
Whse: 1206 Trm: 206 Trn: 256 OP: 206

Items Sold : 2
12/09/2022 16:12:01
```

```
EXAMPLE STORE
Anytown, US

SALE                    90910625773440760000
                            12/09/2022 16:19
QTY   SKU                              PRICE
2     Men SS Shirt Brand 15.00  3
      123456789                        30.00
1     Original Fit Jeans 48.00  4
      987654321                        48.00
SUBTOTAL                              $78.00
      TAX  7%                          $5.46
TOTAL                                 $83.46

CREDIT                                $83.46
Card No .:   xxxx xxxx xxxx 1234
Chip Read
Auth No .: 658026
AID .: 23557D87IQOW

# TOTAL ITEMS 2

*** CUSTOMER COPY ***
```

Example of Adjuster Summary:

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 1. Samsung - 65" Class Q60B QLED 4K Smart Tizen TV* | 1.00 EA | 999.99 | 999.99 | 5/10 yrs | Avg. | 50% | (500.00) | 499.99 |
| https://www.bestbuy.com/site/samsung-65-class-q60b-qled-4k-smart-tizen-tv/6502240.p?skuId=6502240 | | | | | | | | |
| Orig. Desc. - 65" Smart tv, 4k | | | | | | | | |
| 2. Insignia™ - 6' 4K Ultra HD HDMI Cable - Black* | 1.00 EA | 24.99 | 24.99 | 5/10 yrs | Avg. | 50% | (12.50) | 12.49 |
| https://www.bestbuy.com/site/insignia-6-4k-ultra-hd-hdmi-cable-black/6473498.p?skuId=6473498 | | | | | | | | |
| Orig. Desc. - 6' HDMI cable | | | | | | | | |
| 3. Wrangler Men's Short Sleeve Two Pocket Utility Shirt, Sizes S-5XL* | 4.00 EA | 18.97 | 75.88 | 2/8 yrs | Avg. | 25% | (18.97) | 56.91 |
| https://www.walmart.com/ip/Wrangler-Men-s-Short-Sleeve-Two-Pocket-Utility-Shirt-Sizes-S-5XL/941574957?wmlspartner=wlpa&selectedSellerId=0 | | | | | | | | |
| Orig. Desc. - mens short sleeve shirt | | | | | | | | |
| 4. 501® ORIGINAL FIT MEN'S JEANS* | 2.00 EA | 48.00 | 96.00 | 1/8 yrs | Avg. | 12.5% | (12.00) | 84.00 |
| https://www.levi.com/US/en_US/clothing/men/jeans/straight/501-original-fit-mens-jeans/p/005010193 | | | | | | | | |

You can upload your clear, labeled receipts to the Documents tab on MyClaim or send them to claims@claims.allstate.com with your claim number in the subject line for reimbursement consideration.

-------

This is an instructional guide on how to submit receipts for consideration of reimbursement on covered recoverable depreciation and does not confer coverage that is outside of your policy. It is subject to your policy terms, conditions, exclusions and limitations.

Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information may be guilty of a crime and may be subject to prosecution under applicable state law.

Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Northbrook, IL.

Allstate. You're in good hands.

©2023 Allstate Insurance Company. allstate.com 01/2023

**Allstate Insurance Company**

P.O. Box 660636
Dallas, TX 75266
Fax: 866-447-4293
www.myclaim.com

## Recap of Taxes

| | Material Sales Tax (8%) | Cleaning Mtl Tax (8%) | Cleaning Sales Tax (8%) | Clothing Acc Tax (8%) | Manuf. Home Tax (8%) | Storage Rental Tax (8%) | Dryclean/Laundry Tax (8%) |
|---|---|---|---|---|---|---|---|
| **Line Items** | | | | | | | |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total** | | | | | | | |
| | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |

**Allstate Insurance Company**

P.O. Box 660636
Dallas, TX 75266
Fax: 866-447-4293
www.myclaim.com

## Recap by Room

**Estimate: EMILY_MACBLAIN**

| | | |
|---|---|---|
| **Total** | **0.00** | **100.00%** |



Case ID: 260800103

**Allstate Insurance Company**

P.O. Box 660636
Dallas, TX 75266
Fax: 866-447-4293
www.myclaim.com

## Recap by Category

| Items | Total | % |
|---|---|---|
| **Subtotal** | **0.00** | **0.00%** |

Depending upon the circumstances of your loss, our estimate may or may not include an amount for general contractor's overhead and profit. If you have questions regarding general contractor's overhead and profit and whether the services of a general contractor are appropriate for your loss, please contact your claim representative before proceeding with repairs.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

This document includes a damage estimate for your property based on Replacement Cost Value (RCV) and Actual Cash Value (ACV). The ACV estimate reflects the RCV less the amount of any depreciation. Depreciation is the decrease in value of an item due to the item's condition, which takes into consideration age, life expectancy, usage, type of item, and market factors. As your adjuster has explained, depending on your policy, you may be able to recover your depreciation upon your repair or replacement of the covered damages.

During the claim process, we asked for your assistance in establishing the age and condition of your damaged items. If you have any questions regarding the age and condition applied to your property, or any other questions regarding this estimate, please contact your adjuster.

Specialized skill, licensing or certification may be needed of any contractor(s) that you retain, for instance, to identify the presence and nature of any potential contaminants, toxins, pollutants, or other hazards that may be encountered during the course of the work, or to utilize appropriate work practices and procedures during the course of the work. Check with your local or State public health or environmental agency regarding potential hazards, including contractor qualifications and other requirements. For your safety, it is prudent to avoid areas where damaged structures, materials or unknown substances may be present, and to not disturb such structures, material, or unknown substances until your contractors have inspected the work site.

The suggestions above are provided only for your consideration. They in no way supplement, alter or modify your existing coverage. Your insurance policy is the legal contract that contains the terms and limitations of your coverage.

If you have any concerns about the grade of flooring on your estimate, you may take advantage of a free service that will provide you with a more specific analysis. To use this option, please keep a 12" x 12" sample of your damaged flooring, and notify your Allstate adjuster that you would like the additional analysis.

Because your house was built prior to 1978, you need to be aware of the following: To protect against risk of lead paint, on April 22, 2008, the EPA issued a rule requiring the use of lead safe practices and other actions aimed at preventing lead poisoning. Under the rule, beginning in April 2010, contractors performing renovation, repair and painting projects that disturb lead-based paint in homes built before 1978 must be certified and must follow specific work practices to prevent lead contamination. In the event of a covered loss, we will allow the reasonable cost associated with specific work practices outlined by the EPA or local authority. These costs will be considered once they are incurred and submitted for our review.


10' 8"
10'
Kitchen
12'
12' 8"
N
Main Level

**Allstate**

*Allstate Insurance Company*
*PO Box 672041*
*Dallas, TX 75267*



Information as of March 03, 2026

**Claim number:** 0820163012
**Date of loss:** August [illegible], 2025
**Insured:**
Emily Macblain

**Dedicated claim contact:**
Chris Howard
**Direct phone:**
832-244-6591

**Visit us anytime at** MyClaim.com

**Go Paperless! Scan or visit**
**Allstate.com/PaperlessNow**

OFFICE OF JUDICIAL RECORDS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
Filed and Attested by the
Office of Judicial Records
03 AUG 2026 12:29 pm
S. GILLIAM

EMILY MACBLAIN
130 SIGEL ST
PHILADELPHIA, PA 19148-1906

## Unable to provide coverage

Hello Emily Macblain,

You've asked **Allstate Insurance Company** to provide coverage for the interior kitchen ceiling and upstairs bedroom ceiling.

We're unable to provide coverage for the requested damage because of the following provision in your policy which states:

**Losses We Cover Under Coverages A, B and C: We will cover sudden and accidental direct physical loss to the property described in Dwelling Protection-Coverage A, Other Structures Protection-Coverage B and Personal Property Protection-Coverage C**

**Section III—Optional Protection**
**We do not cover loss caused by or consisting of:**
**A-E**

**a) intentional or criminal acts of or at the direction of any insured person, if the loss that occurs: 1) may be reasonably expected to result from such acts; or 2) is the intended result of such acts.**
**b) wear and tear, gradual deterioration, inherent vice, insects or vermin;**
**c) nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered a loss by fire, explosion or smoke. We do cover sudden and accidental direct physical loss by fire resulting from nuclear action. d) war or warlike acts, including, but not limited to insurrection, rebellion or revolution;**
**e) failure by any insured person to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss we cover.**

**Losses We Do Not Cover Under Coverages A, B and C:**
**13 A-D**

**13. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:**
**a) planning, zoning, development, surveying, siting; Standard Select Value Homeowners Policy Policy**
**b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;**

*(Continued)*

**c) materials used in repair, construction, renovation or remodeling; or**
**) maintenance**

We're unable to provide payment for this claim because: The damages to the kitchen are long term wear and tear. Prior repairs did not address the root issue of water intrusion into the home and the damages escalated overtime. The policy does not allow for coverage due to faulty workmanship, or wear and tear over time.

We're here to help. If you need additional information, please visit MyClaim.com or contact us.

## State-specific communications:

For the above stated reasons and any other exclusions or conditions contained in the policy applicable, Allstate Insurance Company will be unable to provide coverage for this loss.

1-800-ALLSTATE (1-800-255-7828) PROD1008

# Exhibit "B"

In the Court of Common Pleas of Philadelphia County

Filed and Attested by the
Office of Judicial Records
28 AUG 2026 02:41 pm
B. BALILONIS

| | |
|---|---|
| **Emily MacBlain**<br>Plaintiff/Petitioner<br>vs.<br>**Allstate Insurance Company**<br>Defendant/Respondent | Case No.: **260800103**<br><br>AFFIDAVIT OF SERVICE OF<br>**VERIFICATION; COMPLAINT; NOTICE TO DEFEND; CERTIFICATE OF COMPLIANCE; EXHIBITS; Notice to Defendant; Certification Form** |

Received by **Elaine Beachler**, on the **25th day of August, 2026 at 8:04 AM** to be served upon **Allstate Insurance Company c/o CT Corporation System, REGISTERED AGENT** at **600 N 2nd St Ste 401, Harrisburg, Dauphin County, PA 17101-1071**.
On the **25th day of August, 2026 at 12:11 PM**, I, **Elaine Beachler**, **SERVED Allstate Insurance Company c/o CT Corporation System, REGISTERED AGENT** at **600 N 2nd St Ste 401, Harrisburg, Dauphin County, PA 17101-1071** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **CT Corporation System, Registered Agent**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to CT Corporation System, Registered Agent. The individual appeared to be a blonde-haired white female contact 25-35 years of age, 5'6"-5'8" tall and weighing 80-120 lbs with piercings and a tattoo.**

Service Fee Total: **$135.00**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: [signature] Elaine Beachler — N/A Server ID # — 8-25-26 Date

Notary Public: Subscribed and sworn before me on this 25th day of August in the year of 2026
Personally known to me _______ or X identified by the following document:

Number/Reference: 22615977
Type: PA ID
Notary Public for State of: PA
Commission Expiration: 03/19/2029

[signature] Roxanna Mellott
Notary Public (Legal Signature)

Commonwealth of Pennsylvania - Notary Seal
Roxanna Mellott, Notary Public
Dauphin County
My commission expires March 19, 2029
Commission number 1457298

# Exhibit "C"

**LABLETTA & WALTERS LLC**
**BY: CHRISTIAN P. LABLETTA, ESQUIRE**
**Attorney I.D. No.: 90545**
**101 W. Elm Street, Suite 110**
**Conshohocken, PA 19428**
**(610) 828-3339**

**ATTORNEY FOR DEFENDANT**

Filed and Attested by the
Office of Judicial Records
15 SEP 2026 12:04 pm
N. HATCHER

| | |
|---|---|
| EMILY MACBLAIN,<br><br>*Plaintiff*,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>*Defendant*. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>AUGUST TERM, 2026<br>NO. 260800103 |

**ENTRY OF APPEARANCE**

TO THE PROTHONOTARY:

Kindly enter my appearance as attorney for the Defendant, Allstate Insurance Company, in the above-captioned Civil Action.

**LABLETTA & WALTERS LLC**

By: */s/ Christian P. LaBletta*
**CHRISTIAN P. LABLETTA, ESQ.**

Dated: September 15, 2026